Filed 10/30/24  Breckenridge Property Fund 2016 v. Sperlein CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRECKENRIDGE PROPERTY FUND 2016, LLC,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>MELISSA SPERLEIN,<br><br>    Defendant, Cross-complainant and Appellant;<br><br>GERALD STOUTENBURG, et al.,<br><br>    Defendants, Cross-complainants and Respondents. | D082593<br><br><br><br>(Super. Ct. No. 37-2018-00026506-CL-UD-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Law Offices of Sam Chandra and Sam Chandra for Plaintiff, Cross-defendant and Appellant.

Melissa Sperlein, in pro. per., for Defendant, Cross-complainant and Appellant.

Gerald Stoutenburg and Margo Stoutenburg, in pro. per., for Defendants, Cross-complainants and Respondents.

INTRODUCTION

This is an appeal and cross-appeal of a judgment entered after a bench trial. Breckenridge Property Fund 2016 LLC (Breckenridge) sued Melissa Sperlein (aka Melissa Stoutenburg), Gerald Stoutenburg, and Margo Stoutenburg (collectively, defendants) under Code of Civil Procedure[1] section 1161a, alleging they failed to timely vacate a property that Breckenridge purchased at a nonjudicial foreclosure sale.[2] The defendants cross-complained on various theories, including that they were entitled to restitution for being forced to vacate the property before the expiration of a lease formed before the foreclosure sale.

On appeal, Breckenridge contends the trial court erred by declining to hold Gerald or Margo liable for unlawful detainer damages. We reject these contentions.

In her cross-appeal, Melissa contends the trial court erred when it concluded she failed to prove the existence of the lease that was the basis for her claimed right to continue occupying the property. We agree with Melissa

[1]   Further unspecified statutory references are to the Code of Civil Procedure.

[2]   At all times in this case, Breckenridge has been represented by counsel, whereas defendants have been self-represented.

2

and because we conclude the error was prejudicial, we reverse the judgment and remand for a retrial.

FACTUAL AND PROCEDURAL BACKGROUND[3]

I.

*Melissa and Gerald's Occupancy of the Property*

Cornelis Stoutenburg and his wife Margo were the owners of residential real property in Escondido. The property was security, under a deed of trust recorded in 2005, for the repayment of a mortgage borrowed by the couple.

According to the trial court's factual findings, at some point before 2002, Melissa "became the tenant of" Cornelis. In 2002, Melissa married Gerald (Cornelis and Margo's son), and Melissa and Gerald occupied the property together from then on. Melissa was a registered nurse. She provided at home care for Cornelis, who suffered from dementia. Margo and Cornelis paid for her services by providing Melissa with rent credits, which she accrued at the rate of two weeks' credit for every one week worked. She accrued rent credits in this manner "at least through 2018."

Cornelis died in 2016, and on September 25, 2017, the property was sold to Breckenridge in a nonjudicial foreclosure sale. The trustee's deed upon sale was recorded on October 3, 2017. On October 6, 2017, a written notice to quit within three, 30, or 90 days (depending on occupancy status) was served at the property.

---

[3] The record in this case consists of a clerk's transcript, a settled statement of the bench trial, and eight trial exhibits; there is no reporter's transcript. Our summary of the factual and procedural background of the action is derived from this limited record.

II.

*Breckenridge Files a Complaint for Unlawful Detainer and Prevails on*

*Summary Judgment*

On May 30, 2018, Breckenridge filed a complaint for unlawful detainer under section 1161a[4] against Margo and Melissa. Melissa answered, and in March 2019 Breckenridge moved for summary judgment.[5] Melissa opposed the motion.

The central issue presented by the summary judgment motion was the length of time Melissa was entitled to remain in possession of the property following service of the notice to quit. This issue implicated section 1161b,

---

[4] Under section 1161a, "a person who holds over and continues in possession of . . . real property after a three-day written notice to quit the property has been served upon the person . . . may be removed therefrom as prescribed in this chapter . . . [w]here the property has been sold in accordance with Section 2924 of the Civil Code [governing nonjudicial foreclosures], under a power of sale contained in a deed of trust executed by such person, or a person under whom such person claims, and the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3).)

Section 1161a further provides that "a tenant or subtenant in possession of a rental housing unit which has been sold by reason of any of the causes enumerated in subdivision (b), who rents or leases the rental housing unit either on a periodic basis from week to week, month to month, or other interval, or for a fixed period of time, shall be given written notice to quit pursuant to Section 1162, at least as long as the term of hiring itself but not exceeding 30 days, before the tenant or subtenant may be removed therefrom as prescribed in this chapter." (§ 1161a, subd. (c).)

[5] The appellate record does not include the parties' summary judgment filings or the trial court's order deciding the merits of the summary judgment motion. However, the order was appealed to the appellate division of the superior court (as we are about to discuss), and the relevant contents of these documents are described in the appellate division's opinion. Our description of the summary judgment motion, opposition, and trial court order is taken from that opinion.

which modifies the notice period that applies to tenants under section 1161a. Specifically, subdivision (a) of section 1161b provides, "Notwithstanding Section 1161a, a tenant or subtenant in possession of a rental housing unit under a month-to-month lease or periodic tenancy at the time the property is sold in foreclosure shall be given 90 days' written notice to quit . . . before the tenant or subtenant may be removed from the property as prescribed in this chapter."

Subdivision (b) of section 1161b further extends the occupancy period for certain tenants. It provides: "In addition to the rights set forth in subdivision (a), tenants or subtenants holding possession of a rental housing unit *under a fixed-term residential lease entered into before transfer of title at the foreclosure sale shall have the right to possession until the end of the lease term*, and all rights and obligations under the lease shall survive foreclosure, except that the tenancy may be terminated upon 90 days' written notice to quit pursuant to subdivision (a) if any of the following conditions apply: [¶] (1) The purchaser or successor in interest will occupy the housing unit as a primary residence. [¶] (2) The lessee is the mortgagor or the child, spouse, or parent of the mortgagor. [¶] (3) The lease was not the result of an arms' length transaction. [¶] (4) The lease requires the receipt of rent that is substantially less than fair market rent for the property, except when rent is reduced or subsidized due to a federal, state, or local subsidy or law." (§ 1161b, subd. (b), italics added.)

Breckenridge claimed Melissa was required to vacate the property after the expiration of 90 days following service of the notice to quit. Melissa argued she was a tenant under an unexpired lease that predated the foreclosure sale and was protected from eviction until after expiration of the

5

lease term under subdivision (b) of section 1161b.  She filed a declaration to which she attached a fully executed lease between herself and Margo.[6]

The trial court granted the summary judgment motion.  It ruled: "Defendant Melissa Sperlein asserts she is a tenant under [section] 1161b, providing a self-serving declaration, without support that the alleged lease was 'the result of an arms' length transaction.[']  (Code Civ. Proc., § 1161b.) It is undisputed that Defendant Melissa Sperlein is the daughter-in-law of the previous owner and alleged landlord.  The submission of the lease agreement without proof of any payment does not establish the lease was reached as the result of an arms' length transaction.  The transaction was admittedly between extended family."

On May 22, 2019, the trial court entered a judgment of possession in favor of Breckenridge and against Melissa.  On May 28, Melissa filed a notice of appeal.  She also petitioned the trial court to stay execution of the judgment while her appeal was pending, which was denied.

In June 2019, while Melissa's appeal was pending, Gerald filed a postjudgment claim of right to possession under section 1174.3.[7]  Following a hearing attended by Gerald and counsel for Breckenridge, the trial court issued a conclusory minute order denying Gerald's claim.  The relevant part

---

[6]     The lease is in the appellate record as an attachment to a subsequent motion for judgment on the pleadings.  The lease was entitled "**RENEWAL RESIDENTIAL LEASE AGREEMENT**."  The lease term started July 1, 2017 and ended June 30, 2020.

[7]     Under section 1174.3, "any occupant not named in the judgment for possession who occupied the premises on the date of the filing of the action may object to enforcement of the judgment against that occupant by filing a claim of right to possession as prescribed in this section."  (§ 1174.3, subd. (a)(1).)

of the order simply stated, "The Court orders the Claim of Right to Possession filed by Gerald Stoutenburg denied. Possession of the premises is awarded to Breckenridge Property Fund 2016 LLC. Mr. Stoutenburg is added to the Judgment and the Writ of Possession may proceed."

III.

*Summary Judgment Is Reversed on Appeal to the Appellate Division of the Superior Court*

In August 2020, the appellate division of the superior court reversed the grant of summary judgment. It found Breckenridge had failed to carry its initial burden of showing it was entitled to possession of the property before the end of the lease term.

It further found that even assuming Breckenridge carried its initial burden, Melissa's opposition evidence created a triable issue of material fact. It explained that while her declaration may have been self-serving, for purposes of summary judgment it had to be liberally construed in her favor. So construed, the appellate division found she presented "admissible evidence supporting her assertion that she had entered into a bona fide lease with the former owner. Attached to her declaration in support of her opposition to the motion for summary judgment is a fully executed form lease agreement between herself [and] Margo Stoutenburg, and her declaration addresses all of the statutory conditions set forth in subdivision (b) of [section 1161b]. Whether or not the lease was entered into as a result of an arms' length transaction remains a triable issue of material fact, which could not properly be resolved via summary judgment based on the evidence before the trial court."

Turning to the procedural status of the case, the appellate division stated: "Lock-out occurred over a year ago, so possession is no longer at

7

issue. This matter is therefore not remanded for a retrial, but is remanded to the trial court to conduct a restitution hearing in accordance with . . . section 908.[8] 'A person whose property has been taken under a judgment is entitled to restitution as a matter of right if the judgment is reversed or set aside, *unless restitution would be inequitable.* [(Citations.)]' (*Beach Break Equities, LLC v. Lowell* (2016) 6 Cal.App.5th 847, 852-853, italics added.)"

IV.

*Proceedings After Remand*

After the case was remanded to the trial court, the parties stipulated that Breckenridge could file an amended complaint and the defendants could file a cross-complaint. The trial court issued a minute order stating the restitution hearing ordered by the appellate division would take place "at the end of the case."

Breckenridge then filed a second amended complaint against defendants asserting causes of action for (1) unlawful detainer—possession no longer at issue; (2) private nuisance; (3) conversion; and (4) common counts. In support of its first cause of action, Breckenridge alleged that on October 6, 2017, it served a written notice to quit that complied with section 1161a, and on July 1, 2019, the defendants were physically removed from the

---

8    "When the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored. The reviewing court may take evidence and make findings concerning such matters or may, by order, refer such matters to the trial court for determination." (§ 908.)

property through the execution of a writ of possession. It sought unlawful detainer damages in the form of the property's fair market rental value for the period defendants unlawfully held over in possession of the property.[9] Defendants, for their part, filed a first amended cross-complaint[10] in which they asserted a total of five causes of action against Breckenridge, including one for "[a]ppeal [r]estitution."[11] (Boldface omitted.)

A. *Bench Trial*

A one-day bench trial was held on January 3, 2023. We have a rather piecemeal record of what occurred at the trial because, although the trial lasted the better part of the day, the settled statement provides only a two-page narrative summary. The narrative, however, is supplemented by the trial minutes and the trial court's subsequent statement of decision, which are attached to and incorporated in it by reference. Our description of the oral trial proceedings is based on these three documents.

---

[9] Although in its amended complaint Breckenridge labeled the action as a limited civil case, the action was subsequently reclassified as an unlimited civil case.

[10] On June 14, 2024, Melissa and Gerald filed a motion to augment the record on appeal to include the first amended cross-complaint. The motion is unopposed and is hereby granted. (See Cal. Rules of Court, rule 8.155(a)(1)(A) ["[a]t any time," on motion of a party, a reviewing court may order the record augmented to include any document filed in the case in superior court]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶4:304, p. 4-75 ["Absent opposition, augmentation motions ordinarily are routinely granted."].)

[11] Defendants' other causes of action against Breckenridge were for malicious prosecution, retaliation, security deposit and bad faith penalty, and slander of credit.

9

It was undisputed at trial that Breckenridge purchased the property at a foreclosure sale on September 25, 2017, and served a 90 day notice to vacate on October 6, 2017.

Melissa, Gerald, and Margo testified to the facts we have previously summarized. Melissa also testified the monthly rental value of the property was $2,600, and she and Gerald occupied the property from September 25, 2017 through July 1, 2019. After July 1, they moved in with Margo, who was living at a different residence in San Diego.

Gerald confirmed Melissa's testimony. He also testified the couple's "rents during all relevant times were paid . . . in the form of previously earned rent credits to his mother Margo . . . who acted as landlord through [September 25, 2017]." He testified he was the one who made these "rental payments."

Margo testified she "did not live in the property during relevant times." However, she admitted accepting rent credits previously earned by Melissa through July 1, 2019, and there was evidence she used the property "for the receipt of mail."

Olivia Reyes, an agent of Breckenridge, testified "as to [the] purchase of the [p]roperty, service of the notice[,] [and] the [d]efendants['] failure to vacate[.]" To avoid a valuation dispute, Breckenridge agreed to use Melissa's rental value of $2,600 per month to calculate its damages.

Relevant to this appeal, the parties filed a joint exhibit list that included several defense exhibits, one of which, exhibit 36, was identified as the "Melissa Sperlein lease to [the property]."
The settled statement indicates that although defendants' trial exhibits were "previously marked for identification," during the trial defendants did not move any of their exhibits into evidence.

However, the trial minutes show that during the trial, counsel for Breckenridge had the "Melissa Sperlein Lease to [the property]" exhibit marked for identification. The trial minutes also show that at the request of counsel for Breckenridge, the trial court took judicial notice of the lease. Specifically, the minutes state, "At the request of [Breckinridge's trial counsel,] *the Court takes judicial notice of Notice of the Lease*[.]" (Italics added.)

B. *The Trial Court's Rulings*

At the conclusion of the parties' presentations, the trial court issued the following rulings from the bench. It found Gerald "was a tenant at the property" and Margo "was not living at the property." It further found "the 90 day notice applies to the parties in this case."

On Breckenridge's operative complaint, it found in favor of Breckenridge and against Melissa and Gerald in the amount of $46,969.72. That amount represented damages at the rate of $2,600 per month or $86.66 per day beginning after expiration of the 90th day from service of the notice to quit, for a period of 542 days of unlawful detention of the premises. On the defendants' operative cross-complaint, it awarded Melissa $2,400 in restitution against Breckenridge.

The court ordered counsel for Breckenridge to prepare a proposed statement of decision.

C. *The Trial Court Modifies Its Rulings*

The trial court subsequently changed two of its rulings. The first change was made via the following entry at the end of the trial minutes: "<u>NOTE:</u> [¶] After the Hearing, On the Court's Own Motion, the Court reverses [its] finding that Defendant Gerald Stoutenburg was a tenant under the doctrine of judicial estoppel. Therefore, the Court vacates the Judgment

11

against Gerald [Stoutenburg]. Judgment shall only be against Defendant Melissa Sperlein on [Breckenridge's operative] Complaint." (Boldface omitted.)

Ten days later, on January 13, 2023, the trial court made the second change via a minute order stating: "The Court vacates its judgment in favor of Cross-complainant Melissa Sperlein and against [Breckenridge] and vacates its award to Sperlein of $2400.00, Nunc Pro Tunc to 01/03/23 *since the lease was never entered into evidence.* [¶] The Court finds judgment on the [cross-complaint] for [Breckenridge] and against Melissa Sperlein. The court notes [Breckenridge] has stipulated to an offset for Sperlein of $2400.00." (Italics added.)

Attached to the January 13 minute order was the proposed statement of decision authored by Breckenridge. The proposed statement of decision repeatedly referenced the defendants' failure to offer the lease (or "rental agreement") into evidence and relied on this failure as the rationale for Melissa's defeat on the claims in the operative complaint and cross-complaint.

Defendants objected to the proposed statement of decision on the ground the rental agreement had been marked as an exhibit by Breckenridge, and "[a]dditionally, the [c]ourt took judicial notice of the rental agreement." Breckenridge filed a reply to defendants' objections to the proposed statement of decisions. In its reply to defendants' objection that the court took judicial notice of the lease, Breckenridge was silent. The record on appeal does not include rulings on these objections.

D.    *The Statement of Decision and Judgment*

On February 3, 2023, the trial court issued its statement of decision, which was identical to the proposed statement of decision drafted by counsel

12

for Breckenridge.  The court first summarized the relevant facts and made factual findings consistent with those we have already recounted.

It then turned to the critical issue in dispute:  the length of time the defendants were entitled to remain in possession of the property following service of the notice to quit.  The court acknowledged that sections 1161a and 1161b were the controlling statutes, and that under them the length of time a person could remain in possession of a property sold in a foreclosure sale depended on the person's occupancy status.  It stated that whereas a former owner or a tenant without a lease must vacate after three, 30, or 90 days, a bona fide tenant with an unexpired lease need not vacate until after expiration of the lease.

Turning to the evidence, the trial court stated:  "Much of the testimony concerned itself with the anticipated defense of an unexpired lease and the status of the occupants.  This testimony ultimately became irrelevant and many of the issues were eliminated for the following reasons:  *First, no lease agreement was offered into evidence.*  Second, for the purposes of damage calculation [Breckenridge] sought damages . . . beginning 90 days after service of the notice.  Third, for the purposes of damage calculation only [Breckenridge] opted to use the [d]efendant's opinion of the value of $2,600.00 per month eliminating any challenge as to rental values."  (Italics added.)  Because Breckenridge only sought damages for the period starting 90 days after service of the notice to quit, the court found it did not need to determine whether a three, 30, or 90 day notice period applied.

Turning to Melissa and Gerald's defense under subdivision (b) of section 1161b that they were entitled to remain in the property under an unexpired fixed-term residential lease, the court stated, "Here the court cannot conduct any analysis *as there was no rental agreement offered into*

13

*evidence.  As such the protections of [section 1161b, subdivision (b),] cannot be found to apply.*"  (Italics added.)

The court ruled that Melissa's occupancy of the premises more than 90 days after service of the notice to quit "constituted unlawful detention of the property."  It found that Gerald was not liable for unlawful detainer damages because "the court's prior denial of his claim of right to possession constitutes a judicial determination as to his liability."  It ruled that Margo was not liable because "she did not reside in the [p]remises[.]"

The court awarded Breckenridge $46,969.72 in unlawful detainer damages against Melissa.  It granted Melissa an offset of $2,400 based on Breckenridge's stipulation that restitution of $2,400 could be awarded to her, but "only as an offset."  Finally, it added to Melissa's total damages an additional $5,977.50 based on an attorney fee award assessed against her earlier in the case.

The court entered judgment on May 15, 2023.  Breckenridge and Melissa each filed a timely notice of appeal.

DISCUSSION

I.

*Breckenridge Fails To Demonstrate Error*

Breckenridge challenges the trial court's findings that neither Gerald nor Margo were liable for unlawful detainer damages.  It contends the court erred and should have found them jointly liable with Melissa, and it asks us to add Gerald and Margo to the judgment.  We conclude Breckenridge fails to establish that the court erred.

A.    *Breckenridge Fails To Overcome the Presumption the Finding of Gerald's Nonliability Is Correct*

When we consider an appeal, we begin with the presumption that a judgment or order of the trial court is correct.  (*Denham v. Superior Court*

14

(1970) 2 Cal.3d 557, 564.) An appellant cannot overcome the presumption of correctness where it ignores the reasoning underlying the judgment in its opening brief on appeal. (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 836.) "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 (*Adam*).)

Breckenridge's challenge to the trial court's resolution of its claims in favor of Gerald falls short of these requirements. As we have mentioned, after initially finding Gerald jointly liable with Melissa for unlawful detainer damages, the trial court reversed its finding based on the assertedly preclusive effect of the earlier ruling denying Gerald's claim of right to possession.[12]

In its opening brief on appeal, Breckenridge fails to address the basis of the trial court's decision. Instead, it presents the relevant issue as simply whether a person who holds over in possession of real property after expiration of a notice to quit should be held liable for unlawful detainer damages. By ignoring the basis of the court's decision, Breckenridge fails to overcome the presumption of correctness. (See *State Water Resources Control Bd. Cases, supra,* 136 Cal.App.4th at p. 836 ["Where the trial court based its judgment on the determination that petitioners failed to exhaust their administrative remedies, petitioners could not simply overcome the presumption of correctness by ignoring that issue in their opening briefs."].)

---

[12] Whereas Judge Ronald F. Frazier presided over the bench trial, Judge Richard S. Whitney adjudicated Gerald's claim of right to possession.

15

In its reply brief, Breckenridge acknowledges for the first time that the basis of the trial court's nonliability finding was its earlier denial of Gerald's claim of right to possession. However, Breckenridge portrays itself as unable to attack the finding because there is no record showing the reason or reasons why Gerald's claim of right to possession was denied. Breckenridge asserts that "[w]e do not know the testimony provided nor do we know the grounds for the denial" of Gerald's claim of right to possession. It asserts that Gerald "[p]erhaps . . . told the court that he moved out the day prior," or "maybe he was deemed to be a guest." It argues that in contrast to what may have been established at the hearing on Gerald's claim of right to possession, Gerald "was actually in possession" such that his "use and enjoyment . . . creates the liability."

The difficulty with these arguments, however, is that Breckenridge has not provided a record showing what occurred at the hearing on Gerald's claim of right to possession and why the trial court resolved that claim as it did. The minute order denying Gerald's claim of right to possession is conclusory and does not state the court's reasons for denying the claim. There is no reporter's transcript of the hearing, and Breckenridge did not request or provide a settled statement summarizing what occurred at the hearing. Breckenridge acknowledges as much in its own briefing, stating, "Here we [have] no record of the proceedings or the reason why the claim was denied."

Breckenridge cannot prevail by speculating about what may or may not have occurred during the hearing on Gerald's claim of right to possession and the reason the claim was denied. Rather, the burden is on Breckenridge to affirmatively demonstrate error by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) "Failure to provide an adequate record on an issue requires that the issue be resolved against appellant." (*Randall v.*

16

*Mousseau* (2016) 2 Cal.App.5th 929, 935.)  "A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.)  As a consequence, we are compelled to reject Breckenridge's challenge to the trial court's resolution of its claims in favor of Gerald.

B.      *Breckenridge Fails To Overcome the Presumption the Finding of Margo's Nonliability Is Correct*

Breckenridge also fails to carry its burden of demonstrating that the trial court erred when it ruled that Margo was not liable for unlawful detainer damages because she did not reside at the property.

Breckenridge's challenge to this ruling is based on the trial court's findings that Margo "use[d] the premises for the receipt of mail and for housing [Gerald and Melissa]" and "accepted rents from Gerald . . . in the form of credits through 2018."  Breckenridge contends these were acts through which Margo exercised possession over the premises, and that the court therefore erred by declining to hold her liable for unlawfully detaining in the property.

Breckenridge presents an interesting question, one that could be characterized as whether a former property owner's acts of constructive possession over the property can serve as a sufficient basis for holding them liable for unlawful detainer damages.  However, due to deficiencies in Breckenridge's appellate arguments, we do not find this to be an appropriate case for resolving it.

In its opening brief, Breckenridge acknowledges that its cause of action for unlawful detainer was brought under section 1161a.  Section 1161a provides, in relevant part, "In any of the following cases, a person who holds over and continues in possession of . . . real property after a three-day written

17

notice to quit the property has been served upon the person, or if there is a subtenant in actual occupation of the premises, also upon such subtenant, as prescribed in Section 1162, may be removed therefrom as prescribed in this chapter:  [¶ . . .] (3) Where the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by such person, or a person under whom such person claims, and the title under the sale has been duly perfected."  (§ 1161a, subd. (b)(3).)

Breckenridge cites no case, and we are aware of none, in which a court has interpreted this provision to authorize the imposition of liability on a former owner who exercises constructive possession over a property sold in foreclosure.

Rather than address section 1161a, Breckenridge relies exclusively on two other authorities.  First, it quotes a different statute, section 1161, which provides that a tenant "is guilty" of unlawful detainer "[w]hen the tenant continues in possession, *in person or by subtenant*, of the property, or any part thereof, after the expiration of the term for which it is let to the tenant," "[w]hen the tenant continues in possession, *in person or by subtenant*, . . . after default in the payment of rent," and "[w]hen the tenant continues in possession, *in person or by subtenant*, after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held[.]"  (Italics added.)  Breckenridge emphasizes the italicized text and asserts that "in the framework of landlord tenant relations," a tenant is "guilty of [u]nlawful [d]etainer . . . [if] they remain in possession personally <u>or through [a] subtenant</u>."  That is the extent of its argument under section 1161.

Then it pivots to a second authority.  It asserts that "[i]n case law we can turn to" *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, and it quotes a

18

passage from *Salazar*. *Salazar* is a quiet title action involving a statute of limitations defense. In the part of *Salazar* quoted by Breckenridge, the appellate court quoted a legal encyclopedia for the proposition that the statute of limitations in a quiet title action does not begin to run " 'where the plaintiff has been and is in possession through his or her tenant for a long period of time.' " (*Id.* at p. 479.)

Breckenridge does not explain the conclusion we should derive from section 1161 or *Salazar*. Instead, after quoting *Salazar*, Breckenridge launches into a factual argument that seems to be intended to impress us with Margo's wrongdoing; it states, among other things, that defendants "knew the[ir] actions were wrongful" and intended "to deceive and defraud [Breckenridge]." And in its reply brief, Breckenridge cites no legal authorities at all but instead merely asserts that Margo "was part of the scheme to defraud [Breckenridge]" because she "continue[d] to rent out the premises" and that she "was part of the family fraud committed by the three [d]efendants" and therefore "shares liability."

These arguments do not sustain Breckenridge's burden of demonstrating error. "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*Adam, supra*, 211 Cal.App.4th at pp. 286–287.) Breckenridge, however, has relied only on inapt authorities. Unlawful detainer statutes are construed strictly. (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 480.) " 'Since [unlawful detainer] is purely statutory in nature, it is essential that a party seeking the remedy bring himself clearly within the statute.' " (*Ibid.*) Breckenridge fails to explain why section 1161, a different statute with different text, may be used to determine Margo's liability under section 1161a, and when Breckenridge's

19

relationship with Margo is not a landlord-tenant relationship. Similarly, Breckenridge's reliance on a case interpreting how the statute of limitations for a quiet title cause of action may be satisfied is not authority we can look to for the proper interpretation of section 1161a.

Breckenridge's failure to rely on pertinent legal authority in its briefs is "enough reason to reject [its] argument." (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 405–406; accord, *South of Market Community Action Network v. City and County of San Francisco* (2019) 33 Cal.App.5th 321, 349.) If we were to attempt to decide the question presented by Breckenridge, we would have to embark on an interpretation of section 1161a on our own, unaided by Breckenridge's arguments, and without Breckenridge even asking us to engage in any such statutory interpretation. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them."].) To do so would be unfair to Margo, who will have had no opportunity to address the proper interpretation of section 1161a in her own briefing. (See *Paglia & Associates Construction, Inc. v. Hamilton* (2023) 98 Cal.App.5th 318, 327 ["It would be unfair for one side to loft an undeveloped legal idea, to rely on the court to work it out, and to leave the opposing party with nothing concrete to tackle in the briefing."].)

We therefore reject Breckenridge's claim that the trial court erred by declining to hold Margo liable. Next, we consider the merits of Melissa's cross-appeal.

## II.

### *Melissa Establishes the Trial Court Erred in Concluding the Existence of the Lease Was Not Proven During the Trial*

Melissa contends the trial court committed reversible error when it rejected her defense and cross-claims on the ground no lease was offered into

evidence. She asserts that "having taken judicial notice of the lease, the trial court's decision turns on the false perception that a lease was not admitted into evidence" and that the effect of taking judicial notice was to accept the lease as "the true lease in question." We agree.

The trial court's ruling reflected the belief that Melissa's failure to formally move the lease into evidence was a technical oversight that compelled the conclusion that she failed to prove the lease existed. This was error, because the court had previously granted judicial notice of the lease, which was an adequate substitute for formal proof.

" 'Under the doctrine of judicial notice, certain matters are assumed to be indisputably true, and the introduction of evidence to prove them will not be required. Judicial notice is thus a substitute for formal proof.' " (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564.) In the case of a legally operative document, the effect of taking judicial notice of the document is to bring the document's existence and contents before the court. (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1.) From the document's existence and contents, the court may deduce its legal effect. (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 184.) Thus, once the court took judicial notice of the lease—a legally operative document—its existence and contents were before the court, alleviating the need for Melissa to formally move it into evidence to establish that it existed. Accordingly, the court erred and abused its discretion by treating the existence of the lease as unproven. (See *People v. Neely* (1999) 70 Cal.App.4th 767, 775–776 ["The trial court does not have discretion to depart from legal standards."]; accord *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 712, fn. 4.)

21

Breckenridge offers two counterarguments to convince us no such error occurred. First, it points out that the trial minutes actually state, "the Court takes judicial notice of Notice of the Lease[.]" It claims this shows the court actually took judicial notice not of the lease but of something called a "notice of lease," although it concedes it does not "have recollection as to what the 'notice of lease' is." We see two possibilities. Either (1) Breckenridge requested judicial notice of a document that is a total mystery, even to Breckenridge, or (2) the deputy clerk meant to say "the Court takes judicial notice of the Lease," but made a typographical error and mistakenly repeated the words "notice of" twice (capitalizing the "N" the second time). Given these alternatives, we choose the only one that is plausible: the trial minutes have a small typographical error, and the court took judicial notice of the lease, not a mystery document.[13] So we reject Breckenridge's first argument.

Second, Breckenridge contends the trial court could not properly take judicial notice of the lease unless it was recorded, and here, the evidence at trial showed the lease was unrecorded. We reject this argument as well. As the party responsible for asking the court to take judicial notice of the lease, Breckenridge is not in a position to complain that the court was wrong to grant its request. (See *Velasquez v. Centrome, Inc.* (2015) 233 Cal.App.4th 1191, 1210 [the doctrine of invited error prevents a party "from leading a trial court to make a particular ruling, and then profiting from the ruling in the appellate court"].) In addition, whether the court erred by taking judicial

---

[13]     At oral argument, Breckenridge claimed for the first time on appeal that a "Notice of Lease" was filed by Gerald before trial. The register of actions does not bear out this claim. As we have observed, Breckenridge was silent in its reply to defendants' objection that the court took judicial notice of the lease. Specifically, it did not claim the judicially noticed document was a "Notice of Lease" filed by Gerald.

22

notice of the lease is immaterial; even erroneous trial court rulings are effective. (See *Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1619, fn. 6 ["a final judgment or order may be res judicata, even if erroneous or contrary to a statute, if the court had jurisdiction over the subject matter and the parties"].) Here, the immediate effect of the court's judicial notice ruling was to accept the existence and contents of the lease as proven, even if the ruling was unsound. Accordingly, we reject Breckenridge's second argument and conclude the trial court erred.

The next question is whether the error is reversible. Breckenridge appears to contend it is not because the lease could have made no difference to the outcome of the trial. Melissa, on the other hand, asserts that the error caused the trial to be unfair.

The parties' competing positions present a choice between two possible standards for reversal of a judgment. Ordinarily, an appellant seeking reversal based on the erroneous exclusion of evidence[14] " 'must show that a different result was probable if the evidence had been admitted.' " (*Kline v. Zimmer, Inc.* (2022) 79 Cal.App.5th 123, 134 (*Kline*); see Evid. Code, § 354; Code Civ. Proc., § 475; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Breckenridge appears to assume this standard for reversal applies. "However, [this] rule does not apply where the error is deemed 'structural.' Such an error typically occurs when the trial court deprives a party of its due process right to a fair trial." (*Kline,* at p. 135.) This type of error creates a

---

14    Although the trial court did not exclude the lease from evidence, it nevertheless committed evidentiary error by incorrectly treating the lease's existence as unproven. Its error was akin to the erroneous exclusion of evidence, because in either instance an item is wrongfully excluded from the factfinder's consideration.

" ' "structural [defect] in the . . . trial mechanism" ' that defies evaluation for harmlessness," making it different from the trial errors that occur "in presentation of the case" to the factfinder and which can be quantitatively assessed. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 579 (*Soule*).) Melissa's contention that the court's error made the trial unfair suggests she may believe the error is structural such that we should reverse whether or not it affected the outcome of the trial. (See *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 534 ["When a trial court's error amounts to structural error, reversal is required without regard to the strength of the evidence or other circumstances."].)

We do not disagree with Melissa's view about the unfairness of her trial. Despite granting judicial notice of the lease during the course of the trial, when it came time to rule on the parties' causes of action the trial court erroneously treated the existence of the lease as unproven. On the basis of this error, it disregarded "[m]uch of the testimony" offered to prove Melissa's "defense of an unexpired lease" as irrelevant. It then declared itself unable to "conduct any analysis" on whether she was entitled to the protections of subdivision (b) of section 1161b, and ultimately concluded "[a]s such the protections of [section] 1161b sub[division (b)] cannot be found to apply." There is more. It also reversed its original adjudication of Melissa's cross-claims in her favor since, to use the court's words, "the lease was never entered into evidence." Thus, the trial court's error arguably resulted in a failure to render a verdict that was based on the complete trial record. (See *Soule, supra,* 8 Cal.4th at p. 579 ["In our view, if a civil litigant was permitted to introduce evidence, cross-examine witnesses, and present argument before a fairly selected jury that rendered its *honest verdict on the trial record*, there has been no 'structural [defect] in the constitution of the

24

trial mechanism' that might call for automatic reversal of a civil judgment without consideration of actual prejudice." (Italics added.)].)

Moreover, the lease was the linchpin of Melissa's defense and cross-claims. Indeed, the sole purpose of the trial was to decide the disputed issue identified by the appellate division—whether or not "[Breckenridge] was entitled to possession prior to the expiration of the lease term." The lease was a premarked trial exhibit. It was identified by name and exhibit number in the parties' filed joint exhibit list. Counsel for Breckenridge had the deputy clerk mark the lease for identification after he began his cross-examination of Melissa. The trial minutes reflect that when defendants rested their case, they rested *subject to the admission of exhibits*," which suggests the court was aware they had exhibits to potentially move into evidence. (Italics added.) From a technical procedural standpoint, Melissa did everything she was supposed to do except formally move the lease into evidence. Under these circumstances, even setting aside that the court had already taken judicial notice of the lease, to rule against Melissa based on her failure to say the magic words required to transform the lease from a marked exhibit into an exhibit offered in evidence has the appearance of unfairly capitalizing on a self-represented litigant's understandable lack of familiarity with courtroom procedure.[15]

---

[15] We acknowledge that California requires self-represented litigants to follow the rules of procedure, and that in general a self-represented party " 'is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) However, Canon 3.B(8) of the California Code of Judicial Ethics and the Advisory Committee Commentary on the canon allow a judge to make reasonable accommodations "to ensure a self-represented litigant can be fairly heard on the merits while the court maintains its impartiality and does not assume (or appear to assume) the role of advocate or partisan." (*Holloway v. Quetel*

Ultimately, however, we need not decide whether the trial court's error was structural because we conclude that at a minimum, it was a trial error that requires reversal of the judgment because "it is reasonably probable that a result more favorable to [Melissa] would have been reached in the absence of the error." (*Watson, supra,* 46 Cal.2d at p. 836; see *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 ["a 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*"].)

We are of the opinion the trial court's error prejudicially undermined Melissa's defense to Breckenridge's claim for unlawful detainer damages as well as the causes of action she maintained against Breckenridge in the operative cross-complaint. The lease was the sole basis for her position that her continued occupancy of the property was lawful and Breckenridge's efforts to remove her before the lease's expiration were unlawful. It was therefore critical to Melissa's ability to prevail on her defense and cross-claims. The effect of the court's error was correspondingly severe. The error "unquestionably prevented" Melissa from establishing her defense and cross-claims. (*Zuniga v. Alexandria Care Center, LLC* (2021) 67 Cal.App.5th 871, 889 [reversing judgment after finding evidentiary error prejudicial under *Watson* where the error "unquestionably prevented" the plaintiff-appellant from establishing her PAGA claim]; see *Wilson v. Southern California Edison*

(2015) 242 Cal.App.4th 1425, 1434.) In that regard, we observe it is not uncommon for trial courts to review with counsel the list of exhibits admitted in evidence before bringing the trial to a conclusion. Nor is it uncommon for trial courts to remind attorneys they have not yet moved a particular exhibit into evidence. It therefore would not have been inappropriate for the trial court to extend Melissa one of these courtesies, and doing so may have avoided the need for this appeal.

*Co.* (2018) 21 Cal.App.5th 786, 808 [the degree to which evidence was emphasized over the course of the trial is a factor to consider in finding its erroneous exclusion to be prejudicial].)  There is more than an abstract possibility that she would have obtained a better result on her defense and cross-claims were it not for the court's error.

Breckenridge asserts that the lease would have made no difference to the outcome of the trial because it was unrecorded and therefore void under Civil Code section 1214.[16]  We are not persuaded.  It is not the case that an unrecorded lease for a term longer than one year is necessarily void. Although this might appear to be the effect of Civil Code section 1214 standing alone, it is qualified by a subsequent provision that states, "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof."  (Civ. Code, § 1217.)  Courts have held that the combined effect of Civil Code sections 1214 and 1217 is that "an unrecorded lease is not void as against a purchaser who has notice of the lease *or such notice as should put him on such inquiry as would disclose its existence.*" (*Evans v. Faught* (1965) 231 Cal.App.2d 698, 705, italics added; see *Scheerer v. Cuddy* (1890) 85 Cal. 270, 272 [holding that the "actual possession" of premises by a lessee was sufficient to put a purchaser "upon inquiry as to the nature and extent of [the lessee's] claim"].)  That the lease between Melissa

---

16     "Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action."  (Civ. Code, § 1214.)

and Margo was unrecorded does not lead inexorably to the conclusion it was void as against Breckenridge.

Breckenridge additionally argues that the lease did not survive the foreclosure because it was subordinate to the foreclosed deed of trust. However, section 1161b, subdivision (b), requires only that the lease was "entered into before transfer of title at the foreclosure sale." It does not require the lease to have been entered into before the foreclosed deed of trust. Breckenridge further asserts that "[e]ven if the lease did survive . . . [t]he remedy is restitution," and "this remedy would off-set as against the claim for damages" for the time Melissa "held the premises hostage without payment of rent to [Breckenridge]." We disagree that we can find the court's error harmless as to the sums it ultimately awarded. As we have explained, Melissa's defense and cross-claims were eviscerated by the error, which necessarily affected the court's imposition of unlawful detainer damages as well as its evaluation of Breckenridge's liability under her cross-claims, only one of which sounded in restitution.

Breckenridge further contends that Melissa could not have succeeded in her defense based on the lease because it was not a bona fide lease pursuant to one or more of the exceptions in section 1161b, subdivision (b).[17]

---

[17]    Melissa contends the Protecting Tenants at Foreclosure Act of 2009 (PTFA) (Pub. L. No. 111–22 (May 20, 2009) 123 Stat. 1632; 12 U.S.C. § 5220 note), rather than section 1161b, is the law that governs her asserted right to occupy the property under the unexpired lease. The PTFA provides that tenants with bona fide lease agreements formed prior to the notice of foreclosure must be allowed to occupy the premises until the end of the lease term, except that the tenancy is to be terminated on 90 days' notice under specified conditions. (Compare 12 U.S.C. § 5220 note with § 1161b, subd. (b).) Melissa's specific contention is that the PTFA governs because it was in effect on the 90th day after Breckenridge served its notice to quit and because it

28

Specifically, it observes that the lease was an "interfamily lease" with "the son of the former owner in possession . . . which did not require payment of rent at market rate." However, there is a statutory exception to the protections afforded by section 1161b when the *lessee* is the child of the mortgagor, not where a person in possession is the child of the mortgagor. (See § 1161b, subd. (b)(2).) Further, the exception based on the lease's rent applies when the lease requires rent that is "*substantially less* than fair market rent," not when the lease merely requires rent that is not at market rate, as Breckenridge argues. (See *id.*, subd. (b)(4), italics added.) Whereas Melissa testified the lease required payment of $2,600 per month, Breckenridge's evidence was that comparable listings rented for $3,176 per month. We do not perceive that the rent required by the lease was substantially less than fair market rent as a matter of law. Thus, whether the rent was substantially less than market rent was a factual issue for the

preempts state law pursuant to the supremacy clause (U.S. Const., art. VI, cl. 2). (See *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 285 [holding the PTFA "prevails over state law that would otherwise extinguish a bona fide lease within the meaning of the [PTFA]"].) However, the premise of her claim is incorrect: the PTFA was not in effect on January 4, 2018 (which is the 90th day after the October 6, 2017 service of the notice to quit). After the PTFA was enacted in 2009, it expired in 2014. (See *Nativi*, at p. 276 [sunset date of December 31, 2014]; *Mik v. Fed. Home Loan Mortg. Corp.* (6th Cir. 2014) 743 F.3d 149, 157, fn. 3 [same].) It was later reinstated, but the effective date of the reinstatement was June 23, 2018—more than five months after January 4, 2018. (Pub. L. No. 115–174, Title III, § 304 (May 25, 2018) 132 Stat. 1296 [restoring sections 701–703 of the PTFA effective 30 days after May 24, 2018].) Further, Melissa does not argue the PTFA was intended to operate retroactively. (See *Landgraf v. USI Film Prods.* (1994) 511 U.S. 244, 271–272 [federal civil statutes are presumed to apply prospectively].) Because Melissa fails to establish the PTFA was effective when the relevant events occurred, we decline to consider whether it supersedes section 1161b.

court, one that it stopped short of resolving once it mistakenly concluded the lease was not in evidence. On this record, there is more than an abstract possibility this issue would have been resolved in Melissa's favor were it not for the court's erroneous conclusion that the lease was not in evidence.

Because we conclude that the trial court's error was prejudicial, we will reverse the judgment in part (1) to the extent it was entered in favor of Breckenridge and against Melissa as to Breckenridge's "[c]laim against [Melissa] for Unlawful Detention of [Breckenridge's] property" (our reversal of this part of the judgment is inclusive of the $46,969.72 in damages and $2,400 stipulated offset that the judgment lists in connection with this claim) and (2) to the extent it was entered in favor of Breckenridge and against Melissa "[a]s to the Causes of action ple[d] by [Melissa] against Breckenridge" in the operative cross-complaint. We will remand the matter for a new trial on the causes of action between Breckenridge and Melissa that were the subject of the first trial.[18] This disposition makes it unnecessary for us to reach Melissa's other challenges to the judgment.

---

[18] We are unable to state with certainty which causes of action from the operative complaint and cross-complaint remained at issue between Melissa and Breckenridge at the time of trial, apart from Breckenridge's first cause of action for unlawful detainer, Melissa's fourth cause of action for retaliation, and Melissa's seventh cause of action for restitution. The statement of decision does not include this information, nor does the sparse appellate record. However, the lease was critical to all causes of action asserted by Breckenridge against Melissa and by Melissa against Breckenridge. After the remittitur issues, the trial court must promptly hold a hearing to determine—with the benefit of input from Melissa and Breckenridge—which causes of action between them were the subject of the trial, because all such causes of action must be retried. (See *Kline, supra,* 79 Cal.App.5th at pp. 136, 137 [after concluding the trial court committed structural error during a jury trial, reversing the judgment and remanding for a retrial on the "same issues"]; *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 900, fn. 25 [in

DISPOSITION

The judgment is reversed in part to the extent it was entered in favor of Breckenridge and against Melissa on the cause of action for unlawful detainer in Breckenridge's operative complaint and the causes of action in Melissa's operative cross-complaint. The trial court is directed to vacate its statement of decision and to conduct further proceedings in accordance with the directions in this opinion, including retrial of the causes of action between Melissa and Breckenridge that were the subject of the first trial. The judgment is otherwise affirmed. Defendants are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

DO, J.

WE CONCUR:

DATO, Acting P. J.

BUCHANAN, J.

---

the context of a decision to grant a motion for new trial after a nonjury trial, "[t]he effect of reopening the case is to vacate the statement of decision and the judgment and return the case to its posture before the filing of the statement of decision and the entry of judgment"].)